IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KEVIN A. SMITH,<br><br>    Plaintiff,<br>v.<br><br>WYNDHAM VACATION OWNERSHIP, INC., d/b/a WYNDHAM DESTINATIONS,<br><br>    Defendant. | MEMORANDUM DECISION ND ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS<br><br>Case No. 4:24-cv-00040-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This matter is before the Court on Defendant's Motion for Sanctions.[1] For the reasons discussed below, the Court will grant the Motion.

I.  BACKGROUND

This case arises out of an employment dispute between Smith and his former employer, Defendant Wyndham Vacation Ownership ("Wyndham"). Smith signed a contract with Wyndham wherein he would receive incentive commissions and overrides for serving as sales manager, senior sales manager, area trainer, director of sales, and podium presenter for Wyndham. He was also supposed to receive commission for sales executed by people he supervised. Wyndham allegedly failed to compensate Smith at the agreed-upon levels for his work in September, October, and November 2023. Smith claims at least $109,807 in withheld wages.

---

[1] Docket No. 31, filed February 21, 2025.

1

During discovery, Wyndham disclosed that they had not paid Plaintiff the monthly commission payment bonus for November 2023.[2] Wyndham calculated this amount to be $2,229.32 and has since tendered payment of that amount. This disclosure led Smith to file a motion for partial summary judgment,[3] arguing that under Utah's Payment of Wages Act ("UPWA") Wyndham owed him an additional $22,961.99. After the motion was filed, Wyndham's counsel contacted Smith's counsel and asked him to withdraw the motion, arguing in a lengthy email that the motion was frivolous.[4] Three minutes later, Smith's counsel indicated that the motion would not be withdrawn.[5] Wyndham later served a Rule 11 motion,[6] prompting Smith's counsel to state that Wyndham's "threat to seek sanctions does not excuse you from responding to our motion nor extend the time for you to do so."[7] Smith later withdrew the motion for partial summary judgment just prior to Wyndham's response deadline, indicating to Wyndham's counsel that "you may be correct that the daily pre-judgment interest should not be determined under . . . Utah Code § 34-28-9.5 (because no final court order had been entered)."[8] Wyndham now seeks sanctions against Smith's counsel under 28 U.S.C. § 1927 and the Court's inherent authority.

---

[2] Docket No. 28-1, at 19.

[3] Docket No. 28.

[4] Docket No. 31-1, at 6–7.

[5] *Id.* at 6.

[6] *Id.* at 10.

[7] *Id.* at 9.

[8] *Id.* at 13.

## II.  DISCUSSION

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "An attorney becomes subject to § 1927 sanctions 'by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.'"[9] For example, "[c]ontinuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927."[10] However, § 1927 represents "an 'extreme standard,' and fees should be awarded 'only in instances evidencing a serious and standard disregard for the orderly process of justice,'"[11] lest the Court "dampen the legitimate zeal of an attorney in representing his client."[12]

The Court also has the inherent authority to sanction bad faith conduct during litigation.[13] This authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[14] "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees."[15]

---

[9] *Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987) (quoting *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985))

[10] *Frey v. Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022).

[11] *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (quoting *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997)).

[12] *Braley,* 832 F.2d 1512.

[13] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

[14] *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962).

[15] *Chambers*, 501 U.S. at 50.

Wyndham's Motion made three primary arguments supporting its contention that Smith's motion for partial summary judgment and counsel's refusal to withdraw it was sanctionable. First, Wyndham argued that Smith's reliance on the UPWA was improper because Smith did not assert a claim under the UPWA in the operative Complaint. Second, Wyndham argued that binding caselaw from the Utah Supreme Court held that the UPWA does not apply to situations where an agreement covers the terms of wage payments. Finally, Wyndham argued that, even if the UPWA applied, it did not support Smith's requested amount. In its Reply, Wyndham "concedes, for purposes of this Motion, that it is not frivolous to argue that the UPWA allows claims based on written agreements or that a plaintiff need not plead a statutory claim in a Complaint."[16] This concession leaves only Wyndham's argument that Smith's request was not supported by the UPWA.

The Court agrees that Smith's request is not supported by the UPWA. Smith's motion for partial summary judgment cobbled together a hodgepodge of UPWA provisions to support his request. Smith first pointed to Utah Code Ann. § 34-28-5 to support his contention that Wyndham was required to pay any back wages within 24 hours of his termination. However, in his response to the instant Motion, Smith eschews any claim under this provision, apparently recognizing that any action under that statute "shall be commenced within 60 days from the date of separation."[17]

Plaintiff next pointed to Utah Code Ann. § 34-28-9.5(3). That provision states:

In an action under this section, the court may award an employee:
(a)     actual damages;

---

[16] Docket No. 35, at 7.

[17] Utah Code Ann. § 34-28-5(1)(c)(ii); Docket No. 34, at 11 ("Because of its 60-day window for filing an action under Utah Code §34-28-5, there was no contention that its provisions should apply.").

> (b)  an amount equal to 2.5% of the unpaid wages owed to the employee, assessed daily for the lesser of:
> (i)  the period beginning the day on which the court issues a final order and ending the day on which the employer pays the unpaid wages owed to the employee; or
> (ii)  20 days after the day on which the court issues a final order; and
> (c)  a penalty described in Subsection 34-28-5(1)(c), if applicable.[18]

Smith appears to have relied on the provision that allows for recover of 2.5% of unpaid wages, assessed on a daily basis, to support his request for damages. In his motion for partial summary judgment, Plaintiff calculated his damages as follows:

> This motion is being filed on January 7, 2025, which is 412 days after November 22, 2023, the date established by statute when at least $2,229.32 was undisputedly due to Plaintiff. The statutory per diem is 2.5% of the unpaid amount, namely $55.733 daily since November 22, 2023. As of January 7, 2025, the additional amount due is therefore $55.733/day x 412 days=$22,961.996.[19]

Though Smith quoted Utah Code Ann. § 34-28-9.5(3) in its entirety in the motion for partial summary judgment, counsel conveniently ignored the provisions of § 34-28-9.5(3)(b), which provides the period when the per diem rate begins—the period beginning the day on which the court issues a final order—and the day it ends—the day on which the employer pays the unpaid wages owed to the employee or 20 days after the day on which the court issues a final order, whichever is earlier. Despite Smith's argument as to the potential applicability of the per diem rate, the statue provides no support for his position that he was entitled to 412 days of a statutory per diem rate. At most, he would be entitled to 20 days, and that would only occur if there was a court final court order, of which there is none, and Wyndham failed to make payment prior to the expiration of the 20-day period. Only under that circumstance would Smith be entitled to the maximum per diem of 20 days. Using Smith's calculations, this would result in a

---

[18] Utah Code Ann. § 34-28-9.5(3).

[19] Docket No. 28, at 6.

5

per diem charge of $1,114.66, far less than the nearly $23,000 he suggested was due. There is simply no basis, statutory or otherwise, that would support Smith's request for 412 days of a statutory per diem rate.

Wyndham's counsel informed Smith's counsel of the purported deficiencies in his motion for partial summary judgment a week after it was filed. Rather than taking time to consider those arguments, counsel responded a mere three minutes later stating that the motion would not be withdrawn. Even after being served with a Rule 11 motion, Smith's counsel did not withdraw the motion for partial summary judgment. Instead, counsel withdrew the motion three weeks after being informed of its deficiencies and just before Wyndham's response was due. Even in responding to the instant Motion, Smith contends that there is still some question as to "whether the 2.5% per diem should apply, and if so for how long."[20] But this argument ignores the plain language of the UPWA, which makes clear that any award would be limited to 20 days after a final court order, at the very most. And since there has been no final court order or even a claim under the UPWA, Smith's reliance on this statute is dubious at best. Despite this, Smith continues to cling to this provision to support his request for damages, even after Wyndham has now thrice explained why it is erroneous. Counsel's repeated reliance on this provision to support Smith's exorbitant request for damages is untenable and has unreasonably multiplied these proceedings.

Smith argues that withdrawal of a motion, even belatedly, prohibits the imposition of sanctions. However, there is no established principle that withdrawal of a motion shields an attorney from § 1927, and the case relied upon, *Mike Ferry Organization v. Bit Gooey, Inc.*,[21] is

---

[20] Docket No. 34, at 13.

[21] Case No. 2:20-cv-00684-RJS-DAO, 2021 WL 12318678 (D. Utah Aug. 30, 2021).

6

readily distinguishable. In that case, the court declined to award sanctions after the plaintiff filed for and later withdrew a motion for temporary restraining order. The court concluded that the record supported the motion for TRO at the time it was filed, and it was withdrawn only after the plaintiff learned, for the first time, that all of the items sought by the TRO had already been turned over. Rather than acting unreasonable, the Court remarked that the withdrawal of the TRO "evidences the diligence and care exercised by" the plaintiff's counsel.[22]

    The same cannot be said here. Smith's counsel was repeatedly informed of the deficiencies in the motion for partial summary judgment but waited until the last minute to withdraw the motion, after Wyndham had largely completed work on its response. Even now, counsel persists in his suggestion that there is an open question as to whether the per diem rate should apply and for how long. This is not the type of diligence and care found in *Mike Ferry* but instead is evidence of obstinacy on the part of counsel.

    Smith also attempts to shift the blame to Wyndham, arguing that it failed to promptly pay him and has made representations that are now contradicted by its discovery responses. However, Smith's attempts to shift the blame do not counteract his own counsel's conduct. Even if Wyndham should have exercised greater diligence in its assessment of Smith's claims and in its court filings, the fact remains that it is Smith's counsel who pursued a motion for partial summary judgment without a valid legal basis.

    Smith also argues that "§ 34-28-9.5 provides the court with the option to determine whether or not to apply a 20-day limit on the daily addition of 2.5%. A 20-day limit is not automatic."[23] But counsel again conveniently ignores the statutory text, which allows for a per

---

[22] *Id.* at *6.

[23] Docket No. 34, at 12.

diem fee for whichever is less: the amount from the court order to the payment by the employer or 20 days from the court order. While Smith is undoubtedly correct that the 20-day period is not automatic, the plain language of the statute does not inure to his benefit. Rather than providing discretion to allow for a longer period, the statute places the 20-day limit as a hard cap on the amount of per diem charges. An employer can, of course, mitigate their losses by tendering the amount due prior to the 20th day, but Smith's contention that the Court could extend that period finds no support.

Smith further contends that he withdrew the motion after Wyndham tendered the check and after an agreement was reached regarding the payment of interest. However, the record does not support this. Wyndham mailed the check on January 17, 2025, and it was received on January 24, 2025. The motion for partial summary judgment was not withdrawn until February 4, 2025. An email exchange on February 3, 2025, demonstrates that there was no agreement regarding interest when Smith's counsel announced his intention to withdraw the motion for partial summary judgment. Smith's counsel stated that Wyndham paying a 10% per annum would resolve the issue but "[r]egardless, either later today or tomorrow I will formally withdraw our current partial summary judgment motion."[24] This statement belies counsel's stated reason for withdrawal.

In sum, a cursory reading of the UPWA should have informed counsel that his position was unsupported. It did not. Wyndham's counsel's email should have caused Smith's counsel some pause. Instead, three minutes later, he rejected the request to withdraw the motion for partial summary judgment. Service of a Rule 11 motion should catch the attention of an officer of the Court. But instead of withdrawing the motion for partial summary judgment right away,

---

[24] Docket No. 31-1, at 14.

Smith's counsel informed opposing counsel that service of the Rule 11 would not extend Wyndham's response time. Smith's counsel then delayed withdrawing the motion until Wyndham's response deadline was nearing, apparently conceding that opposing counsel's arguments concerning the per diem rate, raised three weeks prior, "may be correct."[25] And despite the instant Motion, Smith's counsel continues to advance a theory contradicted by the very statute upon which he relies. The Court cannot countenance such reckless lawyering.[26] While loathe to impose sanctions that might interfere with zealous advocacy, sanctions are warranted here. Counsel ignored the plain language of the UPWA to seek an exorbitant damages award. And, despite being given repeated opportunities to withdraw the motion for partial summary judgment, he persisted in making unsupportable arguments and continues to do so. Under these circumstances, the Court finds that sanctions are warranted.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Sanctions (Docket No. 31) is GRANTED. Smith's counsel must pay Wyndham its costs, expenses, and fees incurred in preparing the instant Motion and the response to Smith's motion for partial summary judgment. Within fourteen (14) days of this Order, Wyndham's counsel must submit a declaration outlining its fees, and the parties are to meet and confer about the requested amount. If the parties are unable to agree to the amount to be paid, they are to contact the Court.

---

[25] *Id.* at 13.

[26] *Braley*, 832 F.2d at 1512 (holding that sanctions are appropriate "for conduct which manifests intentional or reckless disregard of the attorney's duties to the court").

DATED this 27th day of March, 2025.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge